# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| KATHRYN SNEED AND SNEED § <br> EQUESTRIAN ESTATES, LLC, § <br> § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> JEFFREY GIBBS, CALLI ROUSE, § <br> GIBBS SHOW HORSES, CALLI ROUSE § <br> SHOW HORSES, FRANK BONAPARTE, § <br> FRANK BONAPARTE IN HIS CAPACITY § <br> AS CO-TRUSTEE OF THE BONAPARTE § <br> FAMILY LIVING TRUST, PATRICIA § <br> BONAPARTE, PATRICIA BONAPARTE IN § <br> HER CAPACITY AS CO-TRUSTEE OF THE § <br> BONAPARTE FAMILY LIVING TRUST, § <br> JUSTIN SCHMIDT, JEANNIE SCHMIDT, § <br> HAILO INVESTMENTS, LLC, DR. § <br> CAMERON STOUDT DONNELL, EQUINE § <br> SPORTS MEDICINE AND § <br> REHABILITATION, DR. DALTON PATE, § <br> AND MID-SOUTH EQUINE SPORTS § <br> MEDICINE & SURGERY § <br> § <br> *Defendants*. § | Civil Action No. 4:23-cv-871 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are two motions to exclude: the Hailo Defendants' Motion to Exclude Expert Testimony that Plaintiffs' Horses Contracted Strangles at the Hailo Property (Dkt. #141) and Defendants Jeffrey Gibbs, Calli Rouse, Gibbs Show Horses, and Calli Rouse Show Horses' Corrected Motion to Exclude Expert Testimony Upon Plaintiffs' Claims (Dkt. #144).[1]

---

[1] Several motions for summary judgment are also pending in the case. As explained at the beginning of the analysis section, these motions will be pertinent to the Court's decision as to whether the importance of the challenged expert testimony weighs against or in favor of exclusion.

Having considered the Motions and the relevant pleadings, the Court finds that the Motions should be **DENIED**.

## BACKGROUND

This is a tort case arising from the death or injury to several show horses. Plaintiff Kathryn Sneed ("Sneed"), and her company, Plaintiff Sneed Equestrian Estates, LLC (together, "Plaintiffs"), seek redress.

### I.     Factual Background

Plaintiffs seek recovery for injuries to several show horses. Three significant factors played a role in the horses' unfortunate fate: the outbreak of an illness, the horses' alleged physical abuse, and the alleged malpractice of two veterinarians.

The injured or deceased horses for which Plaintiffs seek redress are: Bank on the Best ("Cash"), PartyLikeYouMeanIt ("Faith"), Avante Garde ("Ava"), Mighty Hot Gal ("Bella"), and A Sudden Wonder ("Sudden") (together, the "Sneed Horses"). Below, the Court provides background on Defendants' alleged roles in the Sneed Horses's story.

#### A.     The Strangles Outbreak

Beginning in June 2022, Sneed entered into agreements with Jeffrey Gibbs ("Gibbs"), Calli Rouse ("Rouse"), Gibbs Show Horses, and Calli Rouse Show Horses (together, the "Gibbs Defendants") for the care and training of the Sneed Horses (Dkt. #94 at p. 5). Sneed made monthly payments to the Gibbs Defendants in exchange for their services (Dkt. #94 at p. 5). Plaintiffs allege that the Gibbs Defendants consistently represented to Sneed that they would care and train for the Sneed Horses according to the highest industry standards (Dkt. #94 at p. 5).

The Gibbs Defendants initially boarded the Sneed Horses on property owned by Hailo Investments, LLC ("Hailo") and managed by Justin Schmidt and Jeannie Schmidt (the "Schmidt Defendants," and together with Hailo, the "Hailo Defendants") (Dkt. #94 at p. 5).

Plaintiffs allege that the Schmidt Defendants, and, vicariously, Hailo, permitted a strangles-infected horse onto their property without taking proper and necessary precautions against the spread of the illness (Dkt. #132 at p. 3). Strangles is a highly contagious disease of the equine upper respiratory track (Dkt. #94 at p. 5 n.1). Plaintiffs allege that all the Sneed Horses were "exposed" to strangles (Dkt. #94 at p. 10).

In December 2022, Gibbs transported the Sneed Horses to the Black Bird Ranch (the "Ranch"), a facility owned and operated by the Bonaparte Family Living Trust, and under the control of co-Trustees Frank Bonaparte and Patricia Bonaparte (together, the "Bonaparte Defendants"). Around January 16, 2023, Cash was moved to EE Ranch in Whitesboro, Texas (Dkt. #132 at p. 4). Plaintiffs allege that almost immediately after arriving at the EE Ranch, staff noticed Cash's symptoms and contacted a veterinarian (Dkt. #132 at p. 4). The infection, Plaintiffs allege, almost cost Cash his life and left him unable to breed for the 2023 breeding season (Dkt. #94 at p. 10). Plaintiffs also allege that Faith was infected with strangles, which "was kept secret" from Sneed (Dkt. #94 at p. 11).

B.    The Physical Abuse

Plaintiffs allege that Gibbs abused the Sneed Horses during their stay on Hailo and the Bonaparte's property (Dkt. #94 at pp. 9–10). According to Plaintiffs, Gibbs beat all the Sneed Horses with whips, boards, and other objects (Dkt. #94 at p. 10). An intern allegedly observed Ava tied up "in her stall with her head tied up, and had also tied her head down to her chest with reins drawn under her legs and tied to the saddle" (Dkt. #94 at p. 10).

Plaintiffs claim the intern also saw Gibbs "hobbling Ava's legs together and forcing" her to run (Dkt. #94 at p. 10). This allegedly led Ava to "flip over, fall, and run into things multiple times" (Dkt. #94 at p. 10). The intern allegedly stated that if Ava "did not run," Gibbs "would use blunt traumatic force on her" (Dkt. #94 at p. 10). Plaintiffs also allege that Gibbs would kick the horses if "they did not get up when hobbled" (Dkt. #94 at p. 10).

Further, Plaintiffs allege that a witness saw Gibbs put Ava into her stall while she had a swollen and bloody mouth "from the force of the bit in her mouth after being tied down," and that Ava was then left in the stall for days (Dkt. #94 at p. 10).

Plaintiffs also seek relief relating to Bella and Sudden (Dkt. #94 at p. 12). Bella allegedly suffered from a bone chip on the front right fetlock and another on her second cervical vertebra, which is the same vertebra dislocated in Ava (Dkt. #94 at p. 12). Bella needs surgery and will be required to rest for sixty days after surgery (Dkt. #94 at p. 12). Bella has missed the entire 2023 show season and will not be shown the whole year, even if she recovers (Dkt. #94 at p. 12). Plaintiffs claim that a veterinarian believes that the bone chip was "'trauma' related" (Dkt. #94 at p. 12). Sudden has a bone spur in her hock, and arthritic changes in her knee/carpus (Dkt. #94 at p. 12). Plaintiffs allege this will require Sudden to take sixty days off from shows (Dkt. #94 at p. 12).

### C.    Dr. Stoudt's Alleged Malpractice and Ava's Death

Ava was euthanized on August 10, 2023 (Dkt. #94 at p. 9). That day, the Gibbs Defendants took the Sneed Horses to attend a competition (Dkt. #94 at p. 7). In the morning, Sneed sent a text message to Rouse (one of the Gibbs Defendants caring for the Sneed Horses), checking on Faith and the Gibbs Defendants' arrival at the competition (Dkt. #94 at p. 7). Shortly after, at around 7:25 a.m., Rouse texted Sneed stating that the Gibbs Defendants called a veterinarian to check on

Ava (Dkt. #94 at p. 8). That veterinarian was Dr. Cameron Stoudt ("Dr. Stoudt"), who co-owns Equine Sports Medicine and Rehabilitation ("ESMR") (together, the "Stoudt Defendants").

At around 9:30 a.m., Sneed and Dr. Stoudt spoke on the phone (Dkt. #94 at p. 8). Dr. Stoudt informed Sneed that Gibbs called around 7:00 a.m. "stating it was an emergency" (Dkt. #94 at p. 8). Dr. Stoudt said that Ava was "'down in her stall,'" and was already in that state when she arrived to the scene (Dkt. #94 at p. 8). Dr. Stoudt took an x-ray of Ava's neck (Dkt. #94 at p. 8). Dr. Stoudt informed Sneed that Ava "had a fractured vertebrae at the area where the neck and chest meet," and "advised euthanasia" (Dkt. #94 at p. 8). Dr. Stoudt stated that she had sent the x-ray to a neck surgeon, who also advised euthanasia (Dkt. #94 at p. 8).

Sneed then contacted Dr. Eric Johnson ("Dr. Johnson"), a veterinarian, for a second opinion (Dkt. #94 at p. 8). Dr. Johnson reviewed the x-rays and called Sneed, stating that he did not see a fracture (Dkt. #94 at p. 8). Instead, in Dr. Johnson's view, Ava's "disc was dislocated severely" (Dkt. #94 at p. 8). Dr. Johnson asked for a ventral-dorsal view of the spine (Dkt. #94 at p. 8). Dr. Stoudt sent a "poor-quality x-ray" to Sneed, who sent it to Dr. Johnson (Dkt. #94 at p. 8). Dr. Johnson then consulted with his colleagues, and informed Sneed that this type of injury could only be caused by extreme trauma (Dkt. #94 at p. 8).

Sneed then called Dr. Kevin Claunch ("Dr. Claunch"), a veterinarian, for a third opinion (Dkt. #94 at p. 9). Dr. Claunch reviewed the x-rays, and told Sneed that Ava's injury could "only occur in one of three ways: 1) by running into a fixed object with the head down, 2) a rotational fall, or 3) by flipping over" (Dkt. #94 at p. 9). Dr. Claunch concluded that Ava was paralyzed (Dkt. #94 at p. 9). Only then did Sneed give Dr. Stoudt permission to euthanize Ava (Dkt. #94 at p. 9).

5

Sneed's husband, Darrell Sneed, then contacted Defendant Frank Bonaparte, who served as the co-trustee for the Trust that owned the barn where Ava was stabled (Dkt. #94 at p. 9). Darrell Sneed asked for video footage of Ava's stall (Dkt. #94 at p. 9). He also asked when Ava was last let out of her stall (Dkt. #94 at p. 9). Frank Bonaparte stated his "'IT guy'" would get back to him (Dkt. #94 at p. 9). Frank Bonaparte called back in a few minutes, and sent one photograph, claiming it was from the night before (Dkt. #94 at p. 9). Frank Bonaparte also claimed he could not send video footage, could not send "anything with a date stamped on the footage," and only had footage from the last seventy-two hours (Dkt. #94 at p. 9). On the call with Darrell Sneed, Frank Bonaparte also stated that Ava ate all her food and acted normal the night before her death (the night of August 9, 2023) (Dkt. #94 at p. 9). However, Plaintiffs allege that blood lab work, taken from Ava at 8:05 a.m. on August 10, 2023, showed an elevated white blood cell count, elevated lymphocytes, and dehydration (Dkt. #94 at p. 9). Dr. Stoudt's photo also showed that Ava's legs were swollen on August 10, 2023 (Dkt. #94 at p. 9).

### D.     Faith's Overmedication, Dr. Pate's Alleged Malpractice, and Faith's Death

Plaintiffs allege that Faith was drugged with illegal levels of nonsteroidal anti-inflammatory drugs (NSAIDs) (Dkt. #94 at p. 11). One of the medications, Plaintiffs allege, is a known cause of bone rotation, which causes laminitis (Dkt. #94 at p. 11). Laminitis is the inflammation and subsequent separation of the laminae of the hoof, which is irreversible and often results in euthanasia (Dkt. #94 at p. 11). Plaintiffs also allege that Faith had medicine poured into her ears, which damaged the soft tissue lining of her ears (Dkt. #94 at p. 11). This technique, according to Plaintiffs, is illegal and causes hearing loss and neurological problems (Dkt. #94 at p. 11). Plaintiffs do not specify which Defendant allegedly engaged in this conduct, but they claim the

overmedication occurred during the competition the Gibbs Defendants attended in August 2023 (Dkt. #94 at p. 11).

In June 2024, Faith was admitted to Mid-South Equine Sports Medicine & Surgery, where she was treated for severe laminitis by Dr. Dalton Pate ("Dr. Pate") (together, the "Mid-South Defendants"). Allegedly, Dr. Pate failed to perform an endocrine panel, did not check for insulin resistance or check Faith's records, and failed to check Faith's records before injecting her with steroids (Dkt. #94 at p. 11). Further, Plaintiffs allege that Dr. Pate kept Faith on the same antibiotic treatment despite seeing no improvement (Dkt. #94 at p. 11).

Additionally, Plaintiffs allege that Dr. Pate failed to keep Sneed updated on Faith's health (Dkt. #94 at p. 11). After three weeks, Faith was moved to another hospital where she was subsequently euthanized (Dkt. #94 at p. 11).

## II.  Procedural History

On September 29, 2023, Plaintiffs filed suit (Dkt. #1). Plaintiffs asserted claims of: (1) breach of contract (against the Gibbs Defendants); (2) negligence resulting in injury to Sneed's horses (against all defendants); and (3) gross negligence including animal abuse and injury to Sneed's horses (against the Gibbs Defendants) (Dkt. #1 ¶¶ 40–55). On April 24, 2024, Plaintiffs filed their First Amended Complaint (Dkt. #57). In their First Amended Complaint, Plaintiffs added the Bonaparte Defendants as defendants in their legal capacity as co-trustees of the Trust (Dkt. #57 at p. 1). On October 21, 2024, Plaintiffs filed their Second Amended Complaint (Dkt. #94). That complaint, which is currently operative, added the Mid-South Defendants to the suit (Dkt. #94 at p. 1). In addition to the claims Plaintiffs asserted in their Original Complaint, Plaintiffs assert veterinary malpractice claims against the Stoudt and Mid-South Defendants

(Dkt. #94 at p. 15). Plaintiffs also seek to maintain a "Res Ipsa Loquitur" cause of action against all Defendants (Dkt. #94 at p. 18).

On July 17, 2025, the Stoudt Defendants (Dr. Stoudt and the company she co-owns) moved for summary judgment (Dkt. #123). On September 15, 2025, the Mid-South Defendants (Dr. Pate and the hospital where she cared for Faith) moved for summary judgment (Dkt. #145). On September 15, 2025, the Hailo Defendants (Justin and Jeannie Schmidt, who manage Hailo, the company that owned the property where the Gibbs Defendants initially boarded the Sneed Horses) also moved for summary judgment (Dkt. #146).

Plaintiffs oppose each motion for summary judgment (Dkt. #132; Dkt. #150; Dkt. #151). The Stoudt Defendants filed a reply (Dkt. #137), and Plaintiffs filed a sur-reply (Dkt. #138). The Mid-South Defendants and Hailo Defendants also filed replies (Dkt. #152; Dkt. #153). Plaintiffs filed a sur-reply to the Mid-South Defendants' reply (Dkt. #154). In opposition to each motion for summary judgment, Plaintiffs asserted that additional time to conduct discovery is warranted.

In addition to the motions for summary judgment, two motions to exclude experts were filed. On September 8, 2025, the Hailo Defendants moved to exclude expert testimony that Plaintiffs' horses contracted strangles at the Hailo property (Dkt. #141). On September 9, 2025, the Gibbs Defendants moved to exclude expert testimony on all claims against them (Dkt. #144). The latter motion is opposed (Dkt. #155). Plaintiffs failed to respond to the Hailo Defendants' motion to exclude. Both motions claim that Plaintiffs' expert disclosures do not provide a summary of their non-retained experts' opinions.

On December 19, 2025, the Court granted an unopposed motion to continue the trial date and amend the scheduling order (Dkt. #160). The motion to continue was based, among other

8

things, on the unfortunate development that, since the filing of the operative complaint, Cash has now been euthanized. The motion stated that this "will have an effect on discovery and disclosure obligations" (Dkt. #159 at p. 2 n.2). Pursuant to the Court's order, discovery is now open until February 27, 2026 (Dkt. #160). Trial is set for May 2026 (Dkt. #160).

## LEGAL STANDARD

### I.    Expert Disclosures under Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony and provides a mandatory framework for disclosure of experts in federal court. FED. R. CIV. P. 26(a)(2)(B)–(C). The framework applies differently depending on how the expert became familiar with the facts that inform their opinion.

If a party retains or specially employs an expert to provide testimony, the party must provide a written report that includes: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case. FED. R. CIV. P. 26(a)(2)(B).

Before 2010, non-retained experts, such as treating physicians, were exempt from disclosure requirements. *Hooks v. Nationwide Hous. Sys.*, LLC, No. 15-729, 2016 WL 3667134, at *3 (E.D. La. July 11, 2016). After Congress's 2010 amendments to Rule 26, non-retained experts are subject to some disclosure requirements—which are less stringent than those required by Rule 26(a)(2)(B). *Id*. Under Rule 26(a)(2)(C), the propounding party must prepare a "disclosure"

regarding any expert witness who does not provide a written report. The disclosure of a non-retained witness must state (1) "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and (2) "a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C).

## II.     Exclusion of Experts Based on Rule 26 Violation

If a court determines that a party's disclosures fail to comply with Rule 26, it must then determine whether exclusion of the expert's testimony is warranted. Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

In evaluating whether a violation of Rule 26 is harmless, courts consider four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. *Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)). Courts consider these factors holistically, and do not mechanically count the number of factors that favor each side. *See e.g.*, *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 757 (N.D. Tex. 2021). "The exclusion of evidence is a harsh penalty and should be used sparingly." *Id.* (citation modified). Moreover, the Fifth Circuit has "emphasized that a continuance is the preferred means of dealing with" improperly designated witnesses. *Campbell v. Keystone Aerial Survs., Inc.*, 138 F.3d 996, 1001 (5th Cir. 1998) (citation modified).

## ANALYSIS

### I.  Status of the Pending Motions for Summary Judgment

Before proceeding to the motions to exclude, the Court will share some observations about the pending motions for summary judgment. These observations will help contextualize why the Court will later conclude that the importance of expert testimony weighs against granting the motions to exclude.

The Court will not yet rule on the motions for summary judgment, given that discovery has been extended until February 27, 2026, and that Plaintiffs requested additional time for discovery in their responses to the motions for summary judgment. But Plaintiffs are advised that, in the Court's view, given the nature of the case, expert testimony will be significant to resolving the motions. Under Texas law, a veterinary malpractice claim requires "expert testimony . . . from a member of the veterinary medical profession with education, skill and experience similar to those of the defendant." *Simpson v. Baronne Veterinary Clinic, Inc.*, 803 F. Supp. 2d 602, 607 (S.D. Tex. 2011) (citing *Downing v. Gully*, 915 S.W.2d 181, 185–86 (Tex. App.—Fort Worth, 1996, writ denied)). Yet Plaintiffs did not support their responses with any.

For example, Plaintiffs' response to the Hailo Defendants' motion for summary judgment does not address the summary judgment evidence[2] that the incubation period for strangles eliminates the possibility that the Sneed Horses were infected with strangles during their stay at the property formerly owned by Hailo. The Court is not a veterinarian or an epidemiologist—and

---

[2]  The Hailo Defendants' summary judgment evidence includes testimony from a licensed veterinarian (Dkt. #146-4). Dr. Pate and Dr. Stoudt also introduced testimony from licensed veterinarians that they did not breach the standard of care (Dkt. #123-12; Dkt. #145-4).

11

is not positioned to determine whether a genuine issue of material fact exists if Plaintiffs do not meaningfully respond to the summary judgment evidence.

This case has now been pending since 2023. Months have passed since Plaintiffs requested extra time for discovery in their summary judgment responses. They now have it. Plaintiffs are advised to amend or supplement their responses if discovery enables them to meaningfully respond. Otherwise, the Court will take up the motions for summary judgment as currently briefed.

The Court shares two final reminders. First, about Local Rule CV-56(b), which provides that parties responding to a motion for summary judgment "*must* include" a "response to the [movant's] 'Statement of Undisputed Material Facts.'" (emphasis added). Second, that as "a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175–76 (5th Cir. 1990) (footnote omitted). This means that the rule against hearsay, as well as the evidentiary requirements for expert testimony, apply to any evidence Plaintiffs seek to use to demonstrate the existence of a genuine issue of material fact.

## II.     The Hailo Defendants' Motion to Exclude

The Hailo Defendants filed their motion to exclude on September 8, 2025 (Dkt. #141). It is now January 2026. No response has been filed, and Plaintiffs have not sought leave to file one. This district's Local Rules provide that:

> A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.

LOCAL RULE CV-7(d).

The Hailo Defendants allege that Plaintiffs' expert disclosures do not comply with Federal Rule of Civil Procedure 26(a)(2), which sets forth expert disclosure requirements. Specifically, the

12

Hailo Defendants rely on Rule 26(a)(2)(C)(ii), which provides that the disclosures for non-retained experts *must* "provide a summary of the facts and opinions to which the witness will testify." According to the Hailo Defendants, Plaintiffs' expert disclosures (Dkt. #141-1 at pp. 2–8) provide the topics on which their designated experts will testify, but not a summary of their opinions.

The Court agrees. The disclosures mention that witnesses will testify about the topic of identifying and minimizing an outbreak of the strangles illness, and other topics. But the disclosures do not provide what the witnesses will conclude. For example, the disclosures do not state that the experts will testify that any Defendant negligently failed to identify or minimize strangles or about whether the incubation period for strangles is consistent with any Defendant's liability.[3]

The Hailo Defendants request that the Court exclude any opinions that were not timely disclosed, which, here, would mean all opinions. The Court finds a Rule 26 violation but declines to outright exclude this testimony, given the importance of expert testimony in this case and the reduced prejudice caused by trial being continued from March 2026 to May 2026. Accordingly, the Court will deny the motion. However, it will order Plaintiffs to serve compliant amended expert disclosures on the Hailo Defendants by **January 26, 2026**. The disclosures must provide a summary of facts and the non-retained expert's opinions in accordance with Rule 26(a)(2)(C). To the extent any retained expert testimony will be provided, the disclosures must comply with Rule 26(a)(2)(B). Plaintiffs must file a notice of compliance with the Court after the amended disclosures are served. *See, e.g.*, *Eagle Railcar Services-Roscoe, Inc. v. NGL Crude Logistics, LLC*, No. 1:16-CV-0153-BL, 2018 WL 2317696, at *20 (N.D. Tex. May 22, 2018) (finding Rule 26 violation but opting to issue appropriate orders to cure prejudice instead of granting motion to exclude).

---

[3] The Court also observes that no expert has been designated on the issue of whether Dr. Stoudt or Dr. Pate breached the standard of care.

**III.  The Gibbs Defendants' Motion to Exclude**

This motion is based on the same grounds as the Hailo Defendants' motion. Namely, that Plaintiffs' expert disclosures provide general topics, but not a summary of the opinions that the non-retained experts will provide. Plaintiffs did file a response to this motion after seeking leave to respond, but it took them two months. Despite the extra time, Plaintiffs do little to respond to the substance of the motion. It is not clear whether Plaintiffs' counsel is using a stock response or seeking to distract the Court by arguing the uncontroversial point that non-retained experts are not subject to the stringent disclosure standards for retained experts. When reading the response, one would assume that the Gibbs Defendants argue that non-retained experts must provide a written report (*see* Dkt. #155 at p. 4 ("Plaintiffs designated these experts in accordance with the less stringent requirements of FED. R. CIV. P. 26(a)(2)(C), **not** 26(a)(2)(B), which carries no requirement to provide a report")). But, instead, the motion argues that:

> Despite the requirements for *non-retained experts* that a party must supply a "statement of the subject matter" and "*a summary of facts and opinions* to which the witness is expected to testify," Plaintiffs have disclosed only topics of testimony (subject matter) but none of the expected opinions of the non-retained veterinary experts they list or any summary of facts.

(Dkt. #144 at p. 3 (emphasis added)).

Plaintiffs must respond to what the motion asserts, not what they wish it did. Here, Plaintiffs argue that no written report is required and quote paragraphs from the same disclosures the Court found insufficient when addressing the Hailo Defendants' motion to exclude. The expert disclosures are insufficient because they fail to comply with Rule 26(a)(2)(C)'s requirements for *non-retained* experts: they do not provide a summary of the opinions the experts will provide. Rather, these paragraphs contain general topics of testimony.

The Gibbs Defendants ask the Court to exclude all non-disclosed opinions, which, here, would mean exclude all opinions. Given the importance of expert testimony in this case and the reduced prejudice due to the continuance of trial from March 2026 to May 2026, the Court will deny the motion. However, due to Plaintiffs' violations of Rule 26, the Court will order Plaintiffs to serve compliant amended expert disclosures on the Gibbs Defendants by **January 26, 2026**. The disclosures must provide a summary of facts and the non-retained expert's opinions in accordance with Rule 26(a)(2)(C). To the extent any retained expert testimony will be provided, the disclosures must comply with Rule 26(a)(2)(B). Plaintiffs must file a notice of compliance with the Court after the amended disclosures are served. *See Railcar*, 2018 WL 2317696, at *20.

## CONCLUSION

It is therefore **ORDERED** that the Hailo Defendants' Motion to Exclude Expert Testimony that Plaintiffs' Horses Contracted Strangles at the Hailo Property (Dkt. #141) and Defendants Jeffrey Gibbs, Calli Rouse, Gibbs Show Horses, and Calli Rouse Show Horses' Corrected Motion to Exclude Expert Testimony Upon Plaintiffs' Claims (Dkt. #144) are hereby **DENIED without prejudice**.

It is further **ORDERED** that:

- Plaintiffs must serve amended expert disclosures that comply with Rule 26 on the Gibbs Defendants and the Hailo Defendants by January 26, 2026.
- Plaintiffs must file a notice of compliance with the Court once the amended disclosures are served.

**IT IS SO ORDERED.**

**SIGNED this 12th day of January, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE